UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

United States of America

        v.

Cameron Stroke,

                Defendant.

**Decision and Order**
14-CR-45S

---

Defendant Cameron Stroke ("Stroke") allegedly visited AOL and myYearbook (now MeetMe) online discussion boards in 2009 and 2010 and posted messages encouraging girls under 18 years of age to contact him for sexually explicit communications and activity. Other users complained about the messages, and the complaints eventually made their way to law enforcement. A background investigation led to an interview of Stroke at his apartment by law enforcement officers on January 25, 2011. During the interview, Stroke confirmed his ownership of a particular email address connected to the messages, confirmed that he had made online postings as recently as the previous weekend, and confirmed that a laptop sitting on a coffee table in the apartment was the sole computer that he used for his online postings. Fearing possible destruction of evidence, the officers seized the laptop without a warrant and took it into their custody. After obtaining two search warrants for the contents, officers found child pornography on the laptop. Stroke now stands charged with five counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

The Hon. William M. Skretny has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 12.) The case has had a prolonged history, as the parties have helped the

Court develop a record that addresses numerous potential issues relating to the intersection of New York criminal procedure and federal Fourth Amendment jurisprudence. The most recent oral argument in the case occurred on June 9, 2017, and the most recent deadline for submissions was June 19, 2017. Counsel for both sides deserve credit for addressing the issues as carefully and thoroughly as they have.

Nonetheless, as the Court has begun to assess the record to prepare final recommendations on the merits, one more issue has arisen that requires further attention. Amidst numerous other issues that he has raised and argued, Stroke argued at one point that the law enforcement officers who visited his apartment on January 25, 2011 had no legal basis to suspect him of wrongdoing and thus to seize a laptop and several electronic storage devices that evening. The lead officer investigating Stroke has testified that, prior to beginning the "knock and talk" interview of January 25, 2011, he was already convinced that Stroke committed a crime. Specifically, the officer was convinced that Stroke had committed "[a]t the very least attempting to disseminate indecent material to a minor, but I believe that he was actively speaking with minors, soliciting them online. So disseminating indecent material to minors." (Dkt. No. 42 at 35.) The officer was referring specifically to New York Penal Law § 235.21(3). Under that statute, "A person is guilty of disseminating indecent material to minors in the second degree when . . . Knowing the character and content of the communication which, in whole or in part, depicts actual or simulated nudity, sexual conduct or sado-masochistic abuse, and which is harmful to minors, he intentionally uses any computer communication system allowing the input, output, examination or transfer, of computer data or computer programs from one computer to another, to initiate or engage in such

2

communication with a person who is a minor." The officer was focused exclusively on this statute when, following the warrantless seizure of Stroke's laptop and related devices, he presented an application in local town court to search the devices for evidence of a violation of Penal Law § 235.21(3). (Dkt. No. 35-10 at 4.) The search warrant that was granted justified the search based only on that statute. (*Id.* at 3.)

Stroke, however, has argued that the officer could not have used Penal Law § 235.21(3) as a basis for a search warrant application, and that he could not have relied on any subsequent warrant in good faith, because the statute has been found unconstitutional. (Dkt. No. 89 at 7.) Specifically, in *American Library Ass'n v. Pataki*, 969 F. Supp. 160 (S.D.N.Y. 1997), a district court granted a preliminary injunction barring statewide enforcement of the statute on the basis that it constituted "an extreme burden on interstate commerce." *Id.* at 179. The Government appears never to have addressed *Pataki*, and it will have an opportunity to do so later. The Court's immediate concern, though, is that the constitutional status of Penal Law § 235.21(3) remains unclear. *Pataki* granted a preliminary injunction at first and a permanent one a few weeks later. (S.D.N.Y. Case No. 1:97-CV-222, Dkt. No. 30). The State of New York did not appeal the decision and final judgment. The Second Circuit has not addressed the statute directly, though at least one other circuit has interpreted an analogous statute in a way that preserved constitutionality. *See Am. Booksellers Found. for Free Expression v. Strickland*, 601 F.3d 622, 628 (6th Cir. 2010) (finding that because an analogous statute "does not apply to generally accessible communications, it does not affect out-of-state actors differently than in-state actors, and the benefits to Ohio in protecting its youth from sexual predators and harmful materials certainly

3

outweigh any effect that this law could have on interstate commerce, the statute does not violate the Commerce Clause") (citations omitted). New York's approach to the statute looks ambiguous. On the one hand, the Court has found a case from 2008, 11 years after *Pataki*, in which a state prosecutor requested vacatur of a defendant's conviction because of that case. *People v. Burgess*, 863 N.Y.S.2d 376 (N.Y. App. Div. 2008). On the other hand, the New York Legislature currently is contemplating an amendment to Penal Law § 235.21(3) that would make only minor changes, as if the state still considered the statute constitutional. *See* 2017 N.Y. Assembly Bill No. 7056 (Mar. 29, 2017). A lot of uncertainty surrounds the statute that formed the sole initial basis for the investigation here, and fundamental fairness warrants clearing up that uncertainty as much as possible. After all, probable cause cannot rest on a statute that was unconstitutional at the time of an alleged incident. *See U.S. ex rel. Newsome v. Malcolm*, 492 F.2d 1166, 1174–75 (2d Cir. 1974) ("Newsome, however, was searched incident to arrest for the violation of a statute which we have found unconstitutional . . . . Thus, we consider his warrantless search constitutionally defective because to sustain its validity would emasculate the essential Fourth Amendment protection which only probable cause provides."); *U.S. Postal Serv. v. C.E.C. Servs.*, 869 F.2d 184, 187 (2d Cir. 1989) (holding, inversely, that "[s]o long as the statute is not facially unconstitutional, the district court's finding of probable cause cannot be disturbed"). Only when a statute is *later* found unconstitutional can it support probable cause that arose at an *earlier* time. *See Vives v. City of New York*, 405 F.3d 115, 118 (2d Cir. 2005) (granting qualified immunity to police officers who "did not have fair notice of [a statute's] purported unconstitutionality" at the time of an arrest); *accord Leibovitz v. City of New York*, No. 14CIV3297RAJCF, 2016 WL 3671232, at *5 (S.D.N.Y. Mar. 17,

4

2016) ("The violation of a presumptively valid statute that is later found unconstitutional supports a finding of probable cause."), *report and recommendation adopted*, No. 14-CV-3297 (RA), 2016 WL 3661530 (S.D.N.Y. July 1, 2016), *appeal dismissed* (Oct. 7, 2016).

Consequently, the Court will need to invite the State of New York to intervene in this case to address the constitutionality of Penal Law § 235.21(3). "In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality." 28 U.S.C. § 2403(b). "Certification is thus a duty of the court that should not be ignored, even if the claim is obviously frivolous or may be disposed of on other grounds." *Merrill v. Town of Addison*, 763 F.2d 80, 82 (2d Cir. 1985). The Clerk of the Court is directed to serve a certified copy of this Decision and Order on the New York State Office of the Attorney General. The Attorney General is respectfully requested to file a notice of appearance within 60 days of service. The Court will schedule further proceedings as needed at a later time.

Speedy-trial time remains excluded automatically under 18 U.S.C. § 3161(h)(1)(D), as pretrial motions remain pending.

SO ORDERED.

__/s Hugh B. Scott_____
Honorable Hugh B. Scott
United States Magistrate Judge

DATED: June 20, 2017