UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

United States of America

v.

Cameron Stroke,

Defendant.

**Decision and Order**

14-CR-45S

---

I. INTRODUCTION

Defendant Cameron Stroke ("Stroke") allegedly visited AOL and MyYearbook online discussion boards in 2009 and 2010 and posted messages encouraging girls under 18 years of age to contact him for sexually explicit communications and activity. Other users complained about the messages, and the complaints eventually made their way to law enforcement. A background investigation led to an interview of Stroke at his apartment by law enforcement officers on January 25, 2011. During the interview, Stroke confirmed his ownership of a particular email address connected to the messages, confirmed that he had made online postings as recently as the previous weekend, and confirmed that a laptop sitting on a coffee table in the apartment was the sole computer that he used for his online postings. Fearing possible destruction of evidence, the officers seized the laptop without a warrant and took it into their custody. After obtaining two search warrants for the contents, officers found child pornography on the laptop. Stroke now stands charged with five counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

Stroke filed omnibus pretrial motions on August 4, 2014. (Dkt. No. 35.) The Court has addressed Stroke's motion to suppress through a separate Report and Recommendation. For the

sake of brevity, the Court both presumes familiarity with the case generally and incorporates by reference the detailed background section from the Report and Recommendation. In this writing, the Court addresses Stroke's non-dispositive motions.

II. DISCUSSION

    A. *Motion for Rule 16 Discovery*

In this motion, Stroke seeks Rule 16 discovery including statements; scientific reports; documents including copies of all executed search warrants; investigative reports and evidence logs; documents and logs for any electronic surveillance; photographs; audio and videotapes; and any physical evidence seized during the investigation. Stroke also seeks a "mirror image of all electronic devices seized from [him] on January 25, 2011 deleting any items claimed to be child pornography." (Dkt. No. 35 at 8.) The Government responds generally that it has furnished a voluminous amount of discovery in this case and has not yet refused any of Stroke's discovery requests. With respect to mirror images, the Government denies any obligation to provide an altered mirror image, with the requested deletions, but has offered to make a copy that would allow for private review at the United States Attorney's Office. (Dkt. No. 36 at 8.)

Given the extensive proceedings and discovery that occurred over the long history of this case, Stroke's motion appears to be moot at this time. Nonetheless, to the extent that any specific requests remain outstanding, the Government is directed either to furnish the information or to provide notice of an objection to production.

    B. *Motion for Brady / Jencks / Giglio Material*

Stroke seeks information subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), the Jencks Act, 18 U.S.C. § 3500, and *Giglio v. U.S.*, 405 U.S. 150 (1972). "[S]uppression by the

2

prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution . . . . Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady*, 373 U.S. at 87. The *Brady* rule covers situations "[w]hen the reliability of a given witness may well be determinative of guilt or innocence." *Giglio*, 405 U.S. at 154 (internal quotation marks and citation omitted); *accord U.S. v. Bagley*, 473 U.S. 667, 676 (1985) (plurality opinion) ("Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule.") (citing *Giglio*). When considering information that might fall under the *Brady* rule, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). The Government does not necessarily have to await a defense request to produce information that falls under the *Brady* rule, but neither does it need to adopt an "open file policy." *See id.* at 437; *see also U.S. v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) ("Under *Brady* and its progeny, the government has an affirmative duty to disclose favorable evidence known to it, even if no specific disclosure request is made by the defense. The individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation.") (citations omitted). Also, "[e]vidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *U.S. v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982) (citations omitted). As for the timing of *Brady* disclosure, "[i]t is not feasible or desirable to

3

specify the extent or timing of disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made. Thus disclosure prior to trial is not mandated. Indeed, *Brady* requires disclosure of information that the prosecution acquires during the trial itself, or even afterward . . . . At the same time, however, the longer the prosecution withholds information, or (more particularly) the closer to trial the disclosure is made, the less opportunity there is for use." *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) (citations omitted).

Here, the Government has acknowledged its affirmative obligations for disclosure under *Brady*, the Jencks Act, and *Giglio*, and has committed to making disclosures within the time that the District Judge will set in the eventual trial order. The Government's commitment will suffice, absent a showing that a different arrangement is necessary in this case.

### C. Motion for FRE 404(b), 608, and 609 Material

Stroke seeks notice of evidence that the Government would use at trial under Federal Rules of Evidence ("FRE") 404(b), 608, and 609. FRE 404(b) governs requests for disclosure of all evidence of prior bad acts that the Government intends to use in its case-in-chief. FRE 404 requires that defendants be given "reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to use at trial." To the extent that the Government intends to use any such evidence of a prior bad act in its case in chief, the Government shall produce all FRE 404(b) evidence as directed by the District Judge in the trial order.

With respect to Stroke's requests under FRE 608 and 609, the only notice requirement imposed by either Rule applies closer to trial. FRE 609(b)(2) mandates that "the proponent [give] an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." To the extent that the Government intends to use at trial evidence falling under these rules, it must give reasonable notice as directed by the District Judge in the trial order.

### D. Motion for Preservation of Notes

Stroke seeks an order requiring law enforcement agents who participated in this case to preserve their rough notes and other physical evidence. The Government responds that it already has directed the agents involved to preserve their notes. (Dkt. No. 36 at 10–11.) The motion thus appears to be moot unless some other reason emerges that requires the District Judge to revisit the issue.

### E. Motion for Disclosure of Expert Witnesses

Stroke seeks the identity of Government expert witnesses and a summary of anticipated expert witness testimony. The Government responds that it currently anticipates no use of experts and that it will abide by its obligations if it changes course. The Court directs the Government to remain mindful of its obligations under Rule 16(a)(1)(G), to the extent that it contemplates expert witnesses later, but otherwise finds that its response is sufficient.

5

## III. CONCLUSION

The Court adjudicates Stroke's non-dispositive motions as explained above.

SO ORDERED.

            _/s Hugh B. Scott_
            Hon. Hugh B. Scott
            United States Magistrate Judge

DATED: September 25, 2018